# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUSTAVIA HOME, LLC,<br><br>                                 Plaintiff,<br><br>vs.<br><br>RENEE BUTLER a/k/a RENEE MASLIKHOV, SERGEI MASLIKHOV, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, NEW YORK CITY PARKING VIOLATIONS BUREAU,<br><br>                                 Defendants. | Case No.: 1:17-CV-00801-JBW-RER<br><br><br><br>**GUSTAVIA HOME, LLC'S AFFIDAVIT IN SUPPORT OF DEFAULT JUDGMENT, COMPUTATION, AND JUDGMENT OF FORECLOSURE AND SALE** |

STATE OF Florida )
                  ) ss.:
COUNTY OF Broward )

       Jared Dotoli, being duly sworn, deposes and says:

          1.     I am the Owner/Member of Gustavia Home, LLC ("Plaintiff" or "Gustavia Home"). Plaintiff is the owner of a promissory note ("Note") and mortgage securing the Note ("Mortgage") on the property located at 328 Jefferson Ave, Brooklyn, New York ("Property"). I am familiar with the Note and Mortgage, which are the subject of this action, as well as with the books and records kept and maintained by Gustavia Home, in connection with this matter.

          2.     I make this affidavit in support of Plaintiff's motion for a default judgment, computation of sums due, and judgment of foreclosure and sale. Based on my knowledge of the facts and circumstances of this action and my review of Gustavia Home's business records, I have personal knowledge of the information set forth below.

          3.     On or about June 29, 2007, defendants Renee Butler a/k/a Renee

{11347941:1}

Maslikhov and Sergei Maslikhov ("Defendants" or "Mortgagors") executed and delivered to National City Bank, ("National City") its successors and/or assigns, a promissory note ("Note") evidencing a loan made to Mortgagor in the principal amount of two hundred thousand and 00/100 dollars ($200,000.00) with interest as provided therein. A copy of the Note is attached hereto as **Exhibit "A."**

4.  On or about June 29, 2007, Mortgagors duly executed, acknowledged, and delivered a mortgage ("Mortgage") to National City, for the purpose of securing payment of the indebtedness set forth in the Note, wherein and whereby Mortgagors mortgaged the Property to National City. A copy of the Mortgage is attached hereto as **Exhibit "B."**

5.  On July 18, 2007, the Mortgage was duly recorded in the City Register of the City of New York at City Register File No. ("CFRN") 2007000371937 and the requisite mortgage recording tax and all other fees were duly paid thereon.

6.  The Note is indorsed in blank and Plaintiff was in possession of the Note at commencement, and remains in possession of the Note.

7.  On June 28, 2016, the Mortgage was assigned to Plaintiff (the "Assignment"). On September 7, 2016, the Assignment was recorded in the City Register of the City of New York at CFRN 2016000309970. A copy of the Assignment is attached hereto as **Exhibit "C."**

8.  The Note and Mortgage constitute a valid and binding first lien on the Mortgaged Property.

9.  To-date, Plaintiff remains the owner and holder of the Note and Mortgage.

10.  On November 4, 2016, Mortgagor defaulted under the terms of the Note and Mortgage by failing to make the monthly installment payment due on that day comprising

Scanned by CamScanner

principal, interest and other sums required by the Note and Mortgage and by failing to make all subsequent monthly installment payments due thereafter. Mortgagors' default continues unabated through the present day.

11.     On November 4, 2016, pursuant to the provisions of the Mortgage, notices of default compliant in all respects with the requirements of notice enumerated in Paragraph 8 (entitled "Default") of the Mortgage, and Paragraph 15 of the Mortgage (entitled "Notice"), were sent to Mortgagors, notifying Mortgagors of their failure to make the payments and setting forth each of the other matters required by Paragraph 20 of the Mortgage to be set forth therein. Copies of the notices of default are attached hereto as **Exhibit "D."**

12.     On November 4, 2016, pursuant to the provisions of New York Real Property Actions and Proceedings Law (hereinafter "RPAPL") §1304, ninety (90) day pre-foreclosure notices were sent to Mortgagor. Copies of the ninety (90) day pre-foreclosure notices are attached hereto as **Exhibit "E."**

13.     On November 4, 2016, pursuant to the provisions of RPAPL §1306, Plaintiff timely filed copies of the ninety (90) day pre-foreclosure notices with the New York State Department of Financial Services. A Copy of the Proof of Filing is attached hereto as **Exhibit "F."**

14.     On February 13, 2017, this action was commenced by the filing of a Summons and Complaint in the U.S. District Court for the Eastern District of New York. The procedural aspects of this matter and the legal basis for the relief sought in this Motion will be set forth in the Attorney's Affirmation in Support.

15.     Despite being timely and properly served, Mortgagors have failed to interpose an answer, deny the statements in the Complaint, or otherwise proffer any affirmative

{11347941:1}                     3

defenses to this foreclosure action even though the time to do so has expired.

16.     Through June 9, 2017, Mortgagors owe Gustavia Home, LLC monies in the total amount of $243,008.12, exclusive of attorneys' fees and costs. *See* **Exhibit "G"** annexed hereto, a payoff statement for the loan good through May 18, 2017.

17.     The total debt amount of $243,008.12 consists of $185,870.94 in unpaid principal, and accrued interest in the amount of $57,137.18. *See* **Exhibit "G."**

18.     The accrued interest amount of $57,137.18 is comprised of unpaid interest accrued on the unpaid principal balance of $185,870.94 at a rate of 5.25% from August 1, 2011 to June 9, 2017, with interest accruing at a per diem rate of $26.73. *See* **Exhibit "G"**.

19.     Additionally, Mortgagors agreed to pay "any amounts that Lender spends under this Mortgage to protect the value of the Property and Lender's rights in the Property" and "all costs and expenses of the foreclosure and sale allowed by law. See **Exhibit "B"**, copy of the Mortgage."

20.     To summarize the above, Defendants owe Miss Jones monies in the amount of $243,008.12 which is comprised of the following:

| Unpaid Principal | $185,870.94 |
| Unpaid Interest | $57,137.18 |
| Total | $243,008.12 |

21.     The Property consists of a single parcel, improved by a dwelling, and should be sold as one parcel.

22.     Thus, Gustavia Home seeks an order granting its motion for default judgment, computation of sums due and a determination that the Property should be sold as one parcel, and a judgment of foreclosure and sale.

WHEREFORE, I respectfully request that Gustavia Home's Motion be granted in

Scanned by CamScanner

its entirety, and that it be awarded such other and further relief as the Court deems just, proper, and equitable.



Name: Jared Dotoli

Title: Owner/Member

STATE OF Florida )
                 ) ss.:
COUNTY OF Broward )

On this 12 day of May, 2017, before me, the undersigned, personally appeared Jared Dotoli, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

KIMBERLY RODRIGUEZ
MY COMMISSION # FF998958
EXPIRES June 27, 2020
(407) 398-0153   FloridaNotaryService.com

NOTARY PUBLIC

Scanned by CamScanner

# EXHIBIT A

**National City.**

EQUITY RESERVE℠ AGREEMENT – NATIONAL HOME EQUITY
(Not to be Used for Lines Secured by a Texas Homestead)

Date: 6/29/2007     Account No.

You the undersigned, are opening, an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following material terms and conditions will apply to your Line.

Line of Credit. You Line is an open-end line of credit which you may use, to obtain cash advances (Advances) from time to time for a period of 10 years (9 years 10 months in Connecticut) (Draw Period). If you continue to meet Bank's then current credit and collateral value criteria, at Bank's discretion, Bank will either extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line, on the terms then being offered by Bank for Equity Reserve Lines of Credit. If your Draw Period is not renewed or the Line refinanced, you may repay any outstanding balances during the Repayment Period as provided in the Payment section below.

The initial amount of your Line is $ 200,000.00 (Credit Line). You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks of all or part of your Line at a fixed rate and for a fixed payment. The Fixed Rate Lock (FRL) balance includes the FRL advance fee. Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period. Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement.

Advances. You may obtain Advances under your Line by issuing Equity Reserve checks and special FRL checks (each a Check) supplied by Bank, by contacting Customer Service or by way of any other Bank approved plan. Bank will charge your Checks directly against your Line. You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement. You should notify Bank when you need more Checks. The minimum FRL Advance that you can receive using an FRL Check is $5,000. FRL Check Advances will automatically have a 20-year Repayment Term. You may contact Customer Service after a FRL Check posts to your Line to change the Repayment Term to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances changed to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service. FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check. FRL Checks for less than $5,000 will be posted as a Line Advance. You should also notify Bank immediately if your Checks are lost or stolen. (Please see the "Stop Payment Orders" section of this Agreement.) Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you. You may request copies of paid Checks from the Bank, and a copying fee may be charged.

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states, where such access is limited. The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards. You authorize Bank to issue you a Card for use with the Line. You may purchase goods or services from merchants who honor the Card. You may obtain Advances from Bank or any other financial institution that honors the Card. You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances. Bank will charge all Advances to your Line.

If you allow someone else to use, your Card or PIN and you want to stop such use, you must let Bank know in writing. You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that some person may be using your Card(s) or PIN without permission. You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN. You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-533-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003. (Otherwise you may be liable, but not for more than $50.) Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period. Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle.

Bank will have no obligation to honor any Advance by any means if the resulting new balance, if your Line would exceed your Credit Line, or after the Draw Period ends, or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement and upon Bank's request you will return Checks and/or Cards. Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions.

Charges from foreign merchants and financial institutions may be made in a foreign currency. Bank will bill you in U.S. Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges. In the case of VISA Accounts, the exchange rate applied to each such transaction is a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government mandated rate in effect for the applicable central processing date. In addition, Bank will charge a foreign transaction fee of 1% of the converted amount. Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made.

**Finance Charge for Line and Fixed Rate Lock Advances and During the Repayment Period**

a) Line Advances: Bank figures the finance charge on your Line by applying the periodic rate to the average daily balance of your Line. To get the "average daily balance", Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable, the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance."

Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line. The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index. The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your billing cycle; or, if not published on that date, the last edition published prior to that date, rounded upward, if necessary, to the nearest .01% (Line Index).

The **ANNUAL PERCENTAGE RATE** is the Line Index plus 0.500 %(Line Margin) The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of 06/27/2007, the current periodic rate of **FINANCE CHARGE** is 0.729 % per month which corresponds to an **ANNUAL PERCENTAGE RATE** of 8.750 %.

The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases. In the event of an increase, the finance charge will increase and the minimum payment amount may increase. If the minimum payment amount is either 1.5% of the new balance or the total finance charges, an increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount.

b) Fixed Rate Lock Advances: Bank figures the finance charge on each FRL by applying the periodic rate to the "average daily balance" of the FRL. To get the "average daily balance", Bank takes the beginning balance of the FRL each day and subtracts any payments or credits and unpaid periodic finance charges. This gives the daily balance. Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle. This gives the "average daily balance".

Each FRL is subject to finance charges from the date of the transaction until paid in full. The periodic rate of finance charge and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line. The index shall be the highest daily rate for 3 year Treasury notes with constant maturities from the 1st business day through the 11th last business day of the calendar month preceding the month in which the transaction posts to your Line rounded, if necessary, to the nearest 0.125% (FRL Index). The FRL Index can be found at the Federal Reserve Statistical Release, H. 15 at www.federalreserve.gov/releases/h15.

NHHFRA1 (06/13/2005)



ERA-MULTI-NHV2_1

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of ____06/29/2007____, the FRL Margin, the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term are listed in the table below.

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of FINANCE CHARGE | ANNUAL PERCENTAGE RATE |
|---|---|---|---|
| 5-year FRL: 60 monthly payments | 3.250 | 0.656 | 7.875 |
| 10-year FRL: 120 monthly payments | 3.500 | 0.677 | 8.125 |
| 15-year FRL: 180 monthly payments | 3.750 | 0.698 | 8.375 |
| 20-year FRL: 240 monthly payments (amounts term for FRL checks you write) | 4.250 | 0.740 | 8.875 |
| 7-year "Interest Only" FRL: 83 monthly payments of the points plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month | 3.500 | 0.677 | 8.125 |

c) Both Lien and Fixed Rate Lock Advances: In no event shall the periodic rate of **FINANCE CHARGE** be more than 1.50% per month or less than 0.75% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18.00% or less than 3.00%. The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle.

d) Repayment Period. Any amount outstanding other than FRL's will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances of less than $10,000 as stated in subsections (b) and (c) above. The index value is the high-st FRL Index from the 1st business day through the 11th 1st business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above.

| Other Finance Charges | A Broker fee **FINANCE CHARGE** of $ | | 0.00 |
|---|---|---|---|
| | A Discount Fee **FINANCE CHARGE** of $ | 0.00 | (0.000 % of Credit Line) |
| | A Processing Fee **FINANCE CHARGE** of $ | 0.00 | |
| | An FRL Advance Fee **FINANCE CHARGE** of $50 for each Fixed Rate Lock used. | | |

Other Charges: In addition to finance charges, the following other charges will apply:

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable.
- A Late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Line is past due.
- An overlimit fee, of $25 whenever you go over your Credit Line. Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line.
- A returned payment fee of $30 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason.
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement.
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order.
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States.
- An early termination fee of $ ____350.00____ if you close your Line within the first 36 months.
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge.
- Any real estate related closing fees due, at the closing of your Line as reflected on the HUD1 settlement statement provided to you by the closing agent which is herein incorporated and made part of this Agreement by this reference.

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, for services that Bank performs for you that you have requested. The application of any fee shall not cure the default which initiated the fee.

**Security Interests.** Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of not more than one of your multi unit Dwelling, shall be occupied by you and shall not be used as rental property. Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line. You assist Bank in its payee and beneficiary of the proceeds of and assign to Bank any unearned premiums of, all insurance connected with your Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling. You must not sell or transfer title to the Dwelling without Bank's permission or use the Dwelling for any illegal purpose.

**Property Insurance.** You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law. You must carry flood insurance if required by federal law. You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier. You agree to furnish Bank with written, evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums. If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line. You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line. You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies.

**Tax Deductibility.** You should consult a tax advisor regarding the deductibility of interest and charges on your Line.

**Statements.** Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advances), fees, payments other credits, other charges and debits, and finance charges.

ERA-MULTI-NH-V2_2

Payments  Your payments will be due monthly.  You may pay the entire unpaid balance of your Line and/or your FRL(s) at any time.  You are required to pay, a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.

a) Line Minimum Payment:  The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment)

b) The FRL Minimum Payment is:  For all FRL's except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL including the FRL Advance Fee, at the fixed rate applicable to that FRL calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances".  If you choose the 7-year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding FRL balance, which balance includes the FRL Advance Fee, at the fixed rate applicable to that FRL (as described in the section of this Agreement called "Fixed Rate Lock Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance.  Any amount still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added in the final minimum payment due.  Additional payments on any FRL may be made at any time but you will continue to be obligated to make the fixed payment for the FRL as long as any amount is still owing on the FRI.  The amount of any reduction in principal from a payment on an FRL will become available to you on your Line once it is posted, until the end of the Draw Period.  If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period

c) Repayment Period:  The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period.  If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any FRL balances outstanding at the end of the Draw Period until they are paid in full.  Additionally, any amount outstanding other than an FRL will be converted to a Fixed Rate Lock without an FRL Advance Fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL of equal Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances."  The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more; or one hundred twenty (120) equal monthly payments for balances of less than $10,000.  Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due

Payments will be applied in the following order:  First, to each FRL on a first-in-first out basis for all unpaid periodic finance charges and then to the FRL's principal balance in an amount necessary to amortize the FRL within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line.  For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last.  If there are no balances on the Line, overpayments are applied as a prepayment to the FRL(s) on a first in-first out basis.  If there are no balances on any FRL or on the Line, overpayments are credited to the Line and returned upon request.  In order to make additional partial prepayments to an FRL, or to prepay an FRL in full without paying off your Line, you must contact Customer Service to make arrangements to do so.

Stop Payment Orders.  We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment.  A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months.  Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective.  A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number.  You agree that it is current industry standard to process stop payment orders by means of computer technology.  Accordingly, your failure to provide the exact Identification of Account number and Check number in order to identify the Check to be stopped with result in the Check being paid if presented, and we will not be liable for such payment.  Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor.  Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date.  We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order.

In the event we exceed the Account for a paid Check, then you hereby assign to us all rights against third parties.  You or any joint account holder may order a stop payment.  You agree that we will not be obligated to reimburse your immediately upon notice of alleged wrongful payment; that it is your obligation to prove the fact and amount of damage suffered; and that in no case will we be liable for more than your actual damage.

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care.  You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-0928

Termination of Line.  Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that:
•  You engage in fraud or material misrepresentation in connection with your Line.
•  You do not meet the repayment terms of this Agreement
•  Your action or inaction adversely affects the collateral or Bank's rights in the collateral.

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorney's fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you).  Interest after termination, whether prior to or after judgment, by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full.

Suspension or Reduction of Credit Line.  Bank can refuse to make additional extensions of credit or reduce your Line, if you breach a material obligation of this Agreement in that:
•  The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the Credit Line.
•  Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances.
•  You are in default of a material obligation under this Agreement.
•  Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line.
•  A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice.
•  The maximum annual percentage rate is reached

If your Line is suspended and your have used any FRL(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL balances to your Line

Bank will notify you in writing notice of any such action and conditions for reinstating your credit privileges.  Bank may reinstate your credit privilege, when the conditions leading to suspension are cured to Bank's satisfaction.  Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist.  An additional title commitment and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law.

Change in Terms. Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice.
- The index and margin used for this Line if the original index is no longer available
- A change that you specifically agree to
- A change that benefits you
- An insignificant change.
- Other changes permitted by applicable law

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter.

Other Provisions. You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also require a title examination and/or appraisal from time to time, the cost of which will be paid by you.

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. With reasonable notice to process the request, any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you.

Your rights in your Line may not be assigned. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable.

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this Agreement will then read as if the invalid or unenforceable part were not there.

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107. If your payment is made to any other address, we may accept the payment without losing any of our rights.

You understand that Bank is a national bank located in Ohio, and that Bank's decision to extend the Line to you was made in Ohio. Therefore, this Agreement and your use of the Line, Checks and Cards, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and without regard to conflict of law principles.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Loan as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original.

You can change any term of this Agreement only in a writing signed by us.

You agree that, to the extent not prohibited by applicable law, Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if Bank has been advised of the possibility of such damages.

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement.

Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4088, Kalamazoo, MI 49009. You must include your name, address, Line (account) number and social security number.

You agree that you and Bank have an established business relationship and that, to the extent not prohibited by applicable law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries, National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co.

If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

MINIMUM INITIAL ADVANCE: If Bank is paying the third party closing costs to open your Line, an initial minimum advance of $25,000 is required.

NIIEFRA4A 06/08

ERA-MULTI-NH-V2 4

NOTICES. The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions and/or the choice of law provision set forth below (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated:

If the Dwelling is located in California: Lender may, at its option declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Dwelling is located in Colorado: If your possession are received after the due date, even if received within the days a late fee applies; you may owe a finance and substantial money if the end of the credit transaction an I then any to limit of no reduction of principal. This is due to the accrual of daily interest until a payment is received.

If the dwelling is located in Connecticut: Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods.

If the Dwelling is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON "HI-TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Dwelling is located in Maryland: We elect Subtitle 9, Credit Grantor Open End Credit Provisions of Title 1a of the Commercial Law Article of the Annotated Code of Maryland.

If the Dwelling is located in Minnesota: If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Dwelling is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Dwelling is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Dwelling is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the dwelling is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Dwelling is located in Texas: THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Dwelling is located in Vermont: NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

COPY RECEIVED. You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of the Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights").

RENEE BUTLER
TYPE OR PRINT NAME

SERGEI MASLIKHOV
TYPE OR PRINT NAME

X _____ SIGNATURE
X _____ SIGNATURE
X _____ SIGNATURE
X _____ SIGNATURE

TYPE OR PRINT NAME
TYPE OR PRINT NAME

Address of Dwelling   328 JEFFERSON AVE BROOKLYN , New York 11216

NHEERAS (Rev. 06/13/2008)

ERA-MULTI.NHV2_5

YOUR BILLING RIGHTS   KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About your Bill**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**
If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right.

(a)   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)   The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisements for the property or services.

©2005 Standard By Operating

NHELR 96 (Rev. 09/13/2005)

ERA-MULTI-NHV2_B

DDIOUO3      448961 8280 522666    ALE

## ALLONGE TO LINE OF CREDIT AGREEMENT

PNC Account #:          —

NCC ID #:          ___

DBI Account #:      _____


Case #

Allonge to one certain Line of Credit Agreement Dated on or About:     7/19/2007

and Executed by:     RENEE BUTLER
                     **Primary Debtor**

With a Credit Line of $     $200,000.00

Debtor Mailing Address:     328 JEFFERSON AVE
                            BROOKLYN, NY 11216

Pay to the order of:      _____
Without Recourse

PNC Bank N.A., successor by merger to National City Bank

By: _____
Debra Shealy, President



## ALLONGE TO THE NOTE

**LOAN #:**
**Previous Loan #:**
**Borrower:** RENEE BUTLER AND SERGEI MASLIKHOV
**Date of Note:** 06/29/2007
**Loan Amount:** $200,000.00
**Property Address:** 328 JEFFERSON AVE, BROOKLYN, NY 11216

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust /
Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: MAIN STREET ASSET SOLUTIONS , Without any recourse, representation
or warranty, express or implied

TRINITY FINANCIAL SERVICES, LLC

Signature:

Printed Name: Rhonda Campbell

Title: Assistant Vice President

## ALLONGE TO THE NOTE

Loan Number:                    ~~ ~~ ~~~ ~~
Document Reference #:    (
Borrower:                        RENEE BUTLER AND SERGEI MASLIKHOV
Date of Note:                    6/29/2007
Loan Amount:                   $200,000.00
Property Address:             328 JEFFERSON AVE, BROOKLYN, NY, 11216

For Value received, I hereby transfer, endorse and assign the within Note,

Pay to the order of:
**GUSTAVIA HOME, LLC**, Without recourse

### MAIN STREET ASSET SOLUTIONS, INC.

Signature:
Name:      KARISSA JONES
Title:        VICE PRESIDENT

# EXHIBIT B

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007071100088001002EC6D7

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

**Document ID:** 2007071100088001  **Document Date:** 06-29-2007  **Preparation Date:** 07-16-2007
Document Type: MORTGAGE
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| GROUP 9 INC | AMBER ANDERSON |
| 444 OXFORD VALLEY RD. | 444 OXFORD VALLEY RD. |
| SUITE 300 | SUITE 300 |
| LANGHORNE, PA 19047 | LANGHORNE, PA 19047 |
| 800-570-8928 | 800-570-8928 |
| SBANFER@GROUP9.NET | SBANFER@GROUP9.NET |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1834 | 28 | Entire Lot | 328 JEFFERSON AVENUE |

Property Type: DWELLING ONLY - 3 FAMILY

### CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or _____ Year ____ Reel ____ Page ____ or File Number _____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| RENEE BUTLER | NATIONAL CITY BANK |
| 328 JEFFERSON AVENUE | 1403 CORPORATE CENTER PARKWAY |
| KINGS, NY 11216 | SANTA ROSA, CA 95407 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 200,000.00 | | $                      0.00 |
| Taxable Mortgage Amount: | $ | 200,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $                      0.00 |
| TAXES: County (Basic): | $ | 1,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 2,250.00 | | $                      0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| TASF: | $ | 500.00 | **OF THE CITY REGISTER OF THE** | |
| MTA: | $ | 600.00 | **CITY OF NEW YORK** | |
| NYCTA: | $ | 0.00 | Recorded/Filed    07-19-2007 13:42 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 4,350.00 | **2007000371937** | |
| Recording Fee: | $ | 62.00 | | |
| Affidavit Fee: | $ | 0.00 | Annetta M Sfile | |
| | | | *City Register Official Signature* | |

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|
| | 20070711000088001002CC457 |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 7 |
|---|---|---|
| **Document ID: 2007071100088001** | Document Date: 06-29-2007 | Preparation Date: 07-16-2007 |
| Document Type: MORTGAGE | | |

PARTIES
MORTGAGOR/BORROWER:
SERGEI MASLIKHOV
328 JEFFERSON AVENUE
KINGS, NY 11216

When recorded return to:

Record and Return to:
Group9, Inc.
444 Oxford Valley Rd
Langhorne, PA 19047

———— State of New York ————                                   Space Above This Line For Recording Data

**CREDIT LINE MORTGAGE**
(With Future Advance Clause)

This is a Credit Line Mortgage as defined in New York Real Property Law section 281. The mortgage contemplates that Lender and Mortgagor will enter into a series of advances or advances, payments and readvances. The aggregate amount at any time outstanding will be limited as specified in this Security Instrument.

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ........ June 29, 2007 ....................
   The parties and their addresses are:
   MORTGAGOR:     RENEE BUTLER and
                  SERGEI MASLIKHOV

   328 JEFFERSON AVE BROOKLYN, New York 11216

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.
   LENDER:     NATIONAL CITY BANK
   *405 Corporate Center Parkway*
   *Santa Rosa, CA 95407*

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with power of sale, the following described property:

   EXHIBIT A ATTACHED

   TAX/PARCEL ID:1634-28

   This mortgage affects real property
   that is improved or will be improved
   by a three or four family dwelling only

   The property is located in     Kings ................................................. at
   ..............................................      (County)
   328 JEFFERSON AVE ..............     BROOKLYN .................. , New York     11216 ....
   (Address)                                  (City)                                (ZIP Code)
   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, wells, ditches, reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ ...................... 200,000.00 . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

   Maturity Date: 6/29/2037

   Pursuant to the terms of one or more of the note(s), contract(s), or guaranty(ies), the parties reasonably contemplate entering into a series of advances, payments, advances, and readvances.

B. All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. If these advances are made within 20 years from the date of the recording of this Security Instrument. Advances made more than 20 years after this Security Instrument was recorded are also secured, but may not be secured to the same extent as advances made within 20 years of recording. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All other obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

D. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in the Mortgagor's principal dwelling that is created by this Security Instrument.

5. **MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and may reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Mortgagor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

Exp©1993, 1997 Bankers Systems, Inc., St. Cloud, MN Form-OCP-REMTG-NY 5/13/2005
-C405(NY) 101/01

JA   SM

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

7. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage, with power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

8. **DEFAULT.** Mortgagor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. If there is a default, Lender may, in addition to any other permitted remedy, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and the Lender's security interest. These expenses are payable on demand and will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, reasonable attorneys' fees not in excess of 15% of the unpaid debt if the loan is referred for collection to an attorney who is not a salaried employee of the Lender, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim

SM

against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. SEVERABILITY; INTERPRETATION. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used, to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. NOTICE. Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. AGREEMENTS ABOUT NEW YORK LIEN LAW. If any part of the secured debt is intended or represented to be used for improvements to the Property, Mortgagor will receive all amounts lent to Mortgagor by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law.

17. MORTGAGE TAX.

☐ The Property covered by this Mortgage is or will be improved by a one or two family residence or dwelling.
☐ The Property covered by this Mortgage ☐ is ☐ is not real property improved by one or more structures containing in the aggregate not more than six residential dwelling units, each with separate cooking facilities.

18. LINE OF CREDIT. The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

19. APPLICABLE LAW. This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

20. RIDERS. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents ☐ Other

21. ☐ ADDITIONAL TERMS.

Prepared by:
NATASHA COESTER, National City Bank
1403 Corporate Center Parkway, Santa Rosa Ca 95407
DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

SIGNATURES: By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature) _____ 6/29/07        (Signature) _____ 6.29.07
                    (Date)                              (Date)
RENEE BUTLER                      SERGEY MASLIKHOV

(Signature) _____        (Signature) _____        (Date)

ACKNOWLEDGMENT:
STATE OF New York      COUNTY OF Kings      } ss. 67-64685
On this 29 day of June in the year 2007 before me,
the undersigned, personally appeared Renee Butler, Sergey Maslikhov

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

My commission expires:

May 31, 2008

Notary Public State of New York

NICKOLAS FELELLA
NOTARY PUBLIC-STATE OF N.Y.
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES MAY 31, 2008
#52-64685

**Exhibit A**

NAME(S):        RENEE BUTLER AND SERGEI MASLIKHOV

LONG LEGAL: ALL THAT CERTAIN PARCEL OR TRACT OF LAND SITUATE IN THE BOROUGH OF
BROOKLYN, COUNTY OF KINGS, STATE OF NEW YORK AND BEING THE SAME REAL PROPERTY
CONVEYED TO RENEE BUTLER AND SERGEI MASLIKHOV BY DEED ON 10/4/2006 AS DOCUMENT
NO. 2006000556698 AMONG THE OFFICIAL RECORDS OF THE COUNTY OF KINGS, STATE OF
NEW YORK. SAID DEED REFERENCE MADE HEREIN FOR A MORE FULL DESCRIPTION.

BLOCK: 1834
LOT: 28


TAX MAP#:        1834-28

# EXHIBIT C

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2016090200985001001EEA4D

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2016090200985001 | Document Date: 06-28-2016 | Preparation Date: 09-02-2016 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| RICHMOND MONROE<br>82 JIM LINEGAR LANE<br>BRANSON WEST, MO 65737<br>SUPPORT@SIMPLIFILE.COM | RICHMOND MONROE GROUP<br>PO BOX 458<br>KIMBERLING CITY, MO 65686<br>SUPPORT@SIMPLIFILE.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 1834 | 28 | Entire Lot | 328 JEFFERSON AVENUE |

Property Type: DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN: 2007000371937
☒ Additional Cross References on Continuation Page

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| RENEE BUTLER<br>328 JEFFERSON AVE<br>BROOKLYN, NY 11216 | GUSTAVIA HOME, LLC<br>104 SE 8TH AVENUE<br>PORT LAUDERDALE, FL 33301 |

☒ Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 47.00 | |
| Affidavit Fee: | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
**CITY OF NEW YORK**
Recorded/Filed      09-07-2016 12:00
City Register File No.(CRFN):
2016000309970

*Annette M Hill*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



2016090200985001001CE8CD

**RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)**      **PAGE 2 OF 4**

| | | |
|---|---|---|
| Document ID: 2016090200985001 | Document Date: 06-28-2016 | Preparation Date: 09-02-2016 |

Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
CRFN: 2015000311900
CRFN: 2015000311901
CRFN: 2015000311902

**PARTIES**

ASSIGNOR/OLD LENDER:
SERGEI MASLIKHOV
328 JEFFERSON AVE
BROOKLYN, NY 11216

ASSIGNOR/OLD LENDER:
MAIN STREET ASSET SOLUTIONS, INC
9700 FAIR OAKS BLVD SUITE C
FAIR OAKS, CA 95628

**RECORDING REQUESTED BY:**

When Recorded Return To
MAIN STREET FUNDING/Toni Eutsler
P.O. BOX 458
KIMBERLING CITY, MO 65686
Ref#:

Loan #:
TS Ref #:

## CORPORATE ASSIGNMENT OF MORTGAGE

NY/KINGS

Assignment Prepared on: June 28, 2016

ASSIGNOR: MAIN STREET ASSET SOLUTIONS* at 9700 FAIR OAKS BLVD, SUITE C, FAIR
OAKS, CA, 95628
* INC
ASSIGNEE: GUSTAVIA HOME, LLC, at 104 SE 6TH AVENUE, FORT LAUDERDALE, FL, 33301

For value received, the Assignor does hereby grant, sell, assign, transfer and convey, unto the above-
named Assignee all interest under that certain Mortgage dated 6/29/2007, in the amount of $200,000.00,
executed by RENEE BUTLER AND SERGEI MASLIKHOV to NATIONAL CITY BANK and Recorded:
7/19/2007, Instrument No.: 2007000371937 in KINGS County, State of NEW YORK.

Property Address: 328 JEFFERSON AVE, BROOKLYN, NY, 11216-
Block: 1834 / Lot: 28

Document References:
- Assignment Dated: 4/28/2015 from PNC BANK NATIONAL ASSOCIATION, SUCCESSOR BY MERGER
TO NATIONAL CITY BANK to DREAMBUILDERS INVESTMENTS, LLC Recorded: 9/8/2015, Instrument
No.: 2015000311900
- Assignment Dated: 5/15/2015 from DREAMBUILDERS INVESTMENTS, LLC to Trinity Financial
Services, LLC Recorded: 9/8/2015, Instrument No.: 2015000311901
- Assignment Dated: 5/20/2015 from Trinity Financial Services, LLC to MAIN STREET ASSET
SOLUTIONS, INC Recorded: 9/8/2015, Instrument No.: 2015000311902

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is
an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to
the terms and conditions of the above-described Mortgage.

Page: 2 of 2 / Loan #:            / TS.Ref #:
MAIN STREET CAPITAL PARTNERS, LLC

On: 6/28/16

Signature:
Name:    KARISSA JONES
Title:     VICE PRESIDENT

A Notary public or other officer completing this
certificate verifies only the identity of the
Individual who signed the document to which this
certificate is attached, and not the truthfulness,
accuracy, or validity of that document.

State of CALIFORNIA
County of SACRAMENTO

On 6.28.2016 , before me, NANCY M. KING, a Notary Public, personally appeared KARISSA
JONES, VICE PRESIDENT,   who proved to me on the basis of satisfactory evidence to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

NANCY M. KING
Notary Expires: 3/14/2017 / #: 2011661

NANCY M. KING
Commission # 2011661
Notary Public - California
Sacramento County
My Comm. Expires Mar 14, 2017

NY/KINGS

# EXHIBIT D



# SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

November 4, 2016

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**FIRST CLASS MAIL**

Renee Butler
328 Jefferson Ave
Brooklyn, NY 11216

## NOTICE OF ATTEMPT TO COLLECT DEBT
Para información en Español, llame al (800) 603-0836, ext 2660

RE:      Account No.

Property Address:      328 JEFFERSON AVE, BROOKLYN, NY 11216

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT. ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

**IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.**

Dear Renee Butler;

Please be advised that SN Servicing Corporation (hereinafter referred to as "SN Servicing") is the agent for **Gustavia Home LLC** of the above-referenced loan (hereinafter referred to as "the Debt") and it has authorized SN Servicing to act on its behalf regarding the collection of the Debt. This office is relying on information provided by **Gustavia Home LLC, and important data regarding that information is found on page two of this document.**

You are hereby provided formal notice that you are in default under the terms and conditions of the Note and Security Instrument (i.e., Deed of Trust, Mortgage, etc.) for failure to pay the required installments. The amount required to cure your default as of the date of this letter is the sum of payments that have come due on and after the date of default, September 1, 2011, plus late charges, periodic adjustments to the payment amount and costs, all of which total **$53,670.54**. The date of default is the date that you are due for under the terms of the Note.

You may cure your default within 90 days from the date of this letter, which is February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business day thereafter) by remitting payment to SN Servicing for the above amount, plus all applicable penalties, late charges, and additional fees and expenses which became due during this 90-day period. This amount includes amounts which will become due after the date of this notice, but before 90 days from the date of this letter. As a result of the default, any payment arrangements other than those stated in the Note and Security Instrument will no longer be accepted. SN Servicing reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s).

This letter serves as further notice that SN Servicing intends to enforce the provisions of the Note and Security Instrument. If you do not pay the full amount of $53,670.54 plus all applicable penalties, late charges, and additional fees and expenses which became due during this 90-day period on or before February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business data thereafter), this letter shall serve as further notice to you that immediately thereafter, and without further demand or notice to you, SN Servicing will accelerate the entire sum of both principal and interest. Gustavia Home LLC may also invoke any and all remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. Additional attorney's fees and costs, as provided for in



323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

the Security Instrument, that may be incurred will be your responsibility should you choose to cure the default.  As of the date of this letter, the total amount of the Debt owed is the sum of the unpaid principal balance, which is $185,870.94, plus accrued but unpaid interest, late charges, advances and costs.

You may, if required by law or your loan documents, have the right to cure your default after the acceleration of your payments and prior to the foreclosure sale of your property by paying all amounts past due within the time permitted by law.  However, you will be responsible for all reasonable fees and costs incurred by SN Servicing in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law.  Further, you may have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

### IMPORTANT INFORMATION REGARDING YOUR DEBT

SN Servicing is attempting to collect a debt that you owe to Gustavia Home LLC and any information that we obtain will be used for that purpose.

You are hereby further notified of the following information regarding your Debt:

1) **The amount of the debt:  Remaining principal balance of $185,870.94 plus unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges.**

2) **Name of the creditor to whom the debt is owed:  Gustavia Home LLC.**

3) **Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of the Notice, we will assume that the debt is valid.**

4) **If you notify us in writing within thirty (30) days after receipt of the Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you from our office.**

5) **You will be provided with the name and address of the original creditor, if different from the current creditor, if you send us a request for this information, within thirty (30) days after receipt of this Notice.**

The right to reinstate the debt may be available in many states, and you should ask your own lawyer about this right.  NO PERSON IN THIS OFFICE WILL GIVE YOU ANY LEGAL ADVICE.

If, at any time, you make a written request to this office not to be contacted by phone at your place of employment, we will not do so.  If, at any time, you make a written request to this office not to contact you, we will not do so, except by legal action.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies.

**All communication about this matter must be made through SN Servicing.    If you have ANY QUESTIONS regarding the amounts due, or wish to discuss payment arrangements, please contact Stephanie Childress at (800) 603-0836.**

**SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to:**

**SN Servicing Corporation
323 Fifth Street
Eureka, CA  95501**

 SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

Very truly yours,

SN Servicing Corporation

For Colorado residents, SN Servicing Corporation may also be contacted at the following address or phone number during normal business hours:  Colorado Manager, Inc, 80 Garden Center, Suite 3, Broomfield, CO 80020, 303-920-4763 office, or 303-920-4767 fax.


**SN** SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

November 4, 2016

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**FIRST CLASS MAIL**

Renee Butler
328 Jefferson Ave Apt 1
Brooklyn, NY 11216

**NOTICE OF ATTEMPT TO COLLECT DEBT**
Para información en Español, llame al (800) 603-0836, ext 2660

RE:     Account No.

Property Address:     328 JEFFERSON AVE, BROOKLYN, NY 11216

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  SN SERVICING CORPORATION, ITS
EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT.  ANY
INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

**IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT
REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN
ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN
THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.**

Dear Renee Butler;

Please be advised that SN Servicing Corporation (hereinafter referred to as "SN Servicing") is the agent for
**Gustavia Home LLC**  of the above-referenced loan (hereinafter referred to as "the Debt") and it has
authorized SN Servicing to act on its behalf regarding the collection of the Debt.  This office is relying on
information provided by **Gustavia Home LLC, and important data regarding that information is found
on page two of this document.**

You are hereby provided formal notice that you are in default under the terms and conditions of the Note and
Security Instrument (i.e., Deed of Trust, Mortgage, etc.) for failure to pay the required installments.  The
amount required to cure your default as of the date of this letter is the sum of payments that have come due
on and after the date of default, September 1, 2011, plus late charges, periodic adjustments to the payment
amount and costs, all of which total **$53,670.54**.  The date of default is the date that you are due for under
the terms of the Note.

You may cure your default within 90 days from the date of this letter, which is February 2, 2017 (or if said
date falls on a Saturday, Sunday or legal Holiday, then on the first business day thereafter) by remitting
payment to SN Servicing for the above amount, plus all applicable penalties, late charges, and additional
fees and expenses which became due during this 90-day period. This amount includes amounts which will
become due after the date of this notice, but before 90 days from the date of this letter. As a result of the
default, any payment arrangements other than those stated in the Note and Security Instrument will no
longer be accepted.  SN Servicing reserves the right to accept or reject a partial payment of the total amount
due without waiving any of its rights herein or otherwise.  SN Servicing requires that all payments must be
made in certified funds, cashier's check or money order(s).

This letter serves as further notice that SN Servicing intends to enforce the provisions of the Note and
Security Instrument.  If you do not pay the full amount of $53,670.54 plus all applicable penalties, late
charges, and additional fees and expenses which became due during this 90-day period on or before
February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business data
thereafter), this letter shall serve as further notice to you that immediately thereafter, and without further
demand or notice to you, SN Servicing will accelerate the entire sum of both principal and interest. Gustavia
Home LLC may also invoke any and all remedies provided for in the Note and Security Instrument, including
but not limited to the foreclosure sale of the property.  Additional attorney's fees and costs, as provided for in



**SN SERVICING CORPORATION**

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

the Security Instrument, that may be incurred will be your responsibility should you choose to cure the default. As of the date of this letter, the total amount of the Debt owed is the sum of the unpaid principal balance, which is $185,870.94, plus accrued but unpaid interest, late charges, advances and costs.

You may, if required by law or your loan documents, have the right to cure your default after the acceleration of your payments and prior to the foreclosure sale of your property by paying all amounts past due within the time permitted by law. However, you will be responsible for all reasonable fees and costs incurred by SN Servicing in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law. Further, you may have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

**IMPORTANT INFORMATION REGARDING YOUR DEBT**

SN Servicing is attempting to collect a debt that you owe to Gustavia Home LLC and any information that we obtain will be used for that purpose.

You are hereby further notified of the following information regarding your Debt:

1) **The amount of the debt: Remaining principal balance of $185,870.94 plus unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges.**

2) **Name of the creditor to whom the debt is owed: Gustavia Home LLC.**

3) **Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of the Notice, we will assume that the debt is valid.**

4) **If you notify us in writing within thirty (30) days after receipt of the Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you from our office.**

5) **You will be provided with the name and address of the original creditor, if different from the current creditor, if you send us a request for this information, within thirty (30) days after receipt of this Notice.**

The right to reinstate the debt may be available in many states, and you should ask your own lawyer about this right. NO PERSON IN THIS OFFICE WILL GIVE YOU ANY LEGAL ADVICE.

If, at any time, you make a written request to this office not to be contacted by phone at your place of employment, we will not do so. If, at any time, you make a written request to this office not to contact you, we will not do so, except by legal action.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies.

**All communication about this matter must be made through SN Servicing. If you have ANY QUESTIONS regarding the amounts due, or wish to discuss payment arrangements, please contact Stephanie Childress at (800) 603-0836.**

**SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to:**

**SN Servicing Corporation
323 Fifth Street
Eureka, CA 95501**

SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

Very truly yours,

SN Servicing Corporation

For Colorado residents, SN Servicing Corporation may also be contacted at the following address or phone number during normal business hours: Colorado Manager, Inc, 80 Garden Center, Suite 3, Broomfield, CO 80020, 303-920-4763 office, or 303-920-4767 fax.



**SN SERVICING CORPORATION**

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

November 4, 2016

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**FIRST CLASS MAIL**

Sergei Maslikhov
328 Jefferson Ave Apt 1
Brooklyn, NY 11216

**NOTICE OF ATTEMPT TO COLLECT DEBT**
Para información en Español, llame al (800) 603-0836, ext 2660

RE:      Account No.

Property Address:      328 JEFFERSON AVE, BROOKLYN, NY 11216

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SN SERVICING CORPORATION, ITS**
**EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT. ANY**
**INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

**IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT**
**REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN**
**ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN**
**THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.**

Dear Sergei Maslikhov;

Please be advised that SN Servicing Corporation (hereinafter referred to as "SN Servicing") is the agent for **Gustavia Home LLC** of the above-referenced loan (hereinafter referred to as "the Debt") and it has authorized SN Servicing to act on its behalf regarding the collection of the Debt. This office is relying on information provided by **Gustavia Home LLC, and important data regarding that information is found on page two of this document.**

You are hereby provided formal notice that you are in default under the terms and conditions of the Note and Security Instrument (i.e., Deed of Trust, Mortgage, etc.) for failure to pay the required installments. The amount required to cure your default as of the date of this letter is the sum of payments that have come due on and after the date of default, September 1, 2011, plus late charges, periodic adjustments to the payment amount and costs, all of which total **$53,670.54**. The date of default is the date that you are due for under the terms of the Note.

You may cure your default within 90 days from the date of this letter, which is February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business day thereafter) by remitting payment to SN Servicing for the above amount, plus all applicable penalties, late charges, and additional fees and expenses which became due during this 90-day period. This amount includes amounts which will become due after the date of this notice, but before 90 days from the date of this letter. As a result of the default, any payment arrangements other than those stated in the Note and Security Instrument will no longer be accepted. SN Servicing reserves the right to accept or reject a partial payment of the total amount due without waiving any of its rights herein or otherwise. SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s).

This letter serves as further notice that SN Servicing intends to enforce the provisions of the Note and Security Instrument. If you do not pay the full amount of $53,670.54 plus all applicable penalties, late charges, and additional fees and expenses which became due during this 90-day period on or before February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business data thereafter), this letter shall serve as further notice to you that immediately thereafter, and without further demand or notice to you, SN Servicing will accelerate the entire sum of both principal and interest. Gustavia Home LLC may also invoke any and all remedies provided for in the Note and Security Instrument, including but not limited to the foreclosure sale of the property. Additional attorney's fees and costs, as provided for in

 **SERVICING CORPORATION**

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

the Security Instrument, that may be incurred will be your responsibility should you choose to cure the default.  As of the date of this letter, the total amount of the Debt owed is the sum of the unpaid principal balance, which is $185,870.94, plus accrued but unpaid interest, late charges, advances and costs.

You may, if required by law or your loan documents, have the right to cure your default after the acceleration of your payments and prior to the foreclosure sale of your property by paying all amounts past due within the time permitted by law.  However, you will be responsible for all reasonable fees and costs incurred by SN Servicing in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law.  Further, you may have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

**IMPORTANT INFORMATION REGARDING YOUR DEBT**

SN Servicing is attempting to collect a debt that you owe to Gustavia Home LLC and any information that we obtain will be used for that purpose.

You are hereby further notified of the following information regarding your Debt:

1) **The amount of the debt:  Remaining principal balance of $185,870.94 plus unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges.**

2) **Name of the creditor to whom the debt is owed:  Gustavia Home LLC.**

3) **Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of the Notice, we will assume that the debt is valid.**

4) **If you notify us in writing within thirty (30) days after receipt of the Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you from our office.**

5) **You will be provided with the name and address of the original creditor, if different from the current creditor, if you send us a request for this information, within thirty (30) days after receipt of this Notice.**

The right to reinstate the debt may be available in many states, and you should ask your own lawyer about this right.  NO PERSON IN THIS OFFICE WILL GIVE YOU ANY LEGAL ADVICE.

If, at any time, you make a written request to this office not to be contacted by phone at your place of employment, we will not do so.  If, at any time, you make a written request to this office not to contact you, we will not do so, except by legal action.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies.

**All communication about this matter must be made through SN Servicing.   If you have ANY QUESTIONS regarding the amounts due, or wish to discuss payment arrangements, please contact Stephanie Childress at (800) 603-0836.**

**SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to:**

**SN Servicing Corporation
323 Fifth Street
Eureka, CA  95501**

 SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

Very truly yours,

SN Servicing Corporation

For Colorado residents, SN Servicing Corporation may also be contacted at the following address or phone number during normal business hours:  Colorado Manager, Inc, 80 Garden Center, Suite 3, Broomfield, CO 80020, 303-920-4763 office, or 303-920-4767 fax.



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

November 4, 2016

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**FIRST CLASS MAIL**

Sergei Maslikhov
328 Jefferson Ave
Brooklyn, NY 11216

## NOTICE OF ATTEMPT TO COLLECT DEBT
Para información en Español, llame al (800) 603-0836, ext 2660

RE:  Account No. ▓▓▓▓▓▓▓

Property Address:  328 JEFFERSON AVE, BROOKLYN, NY 11216

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  SN SERVICING CORPORATION, ITS**
**EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT.  ANY**
**INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.**

**IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT**
**REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN**
**ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN**
**THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.**

Dear Sergei Maslikhov;

Please be advised that SN Servicing Corporation (hereinafter referred to as "SN Servicing") is the agent for
**Gustavia Home LLC** of the above-referenced loan (hereinafter referred to as "the Debt") and it has
authorized SN Servicing to act on its behalf regarding the collection of the Debt.  This office is relying on
information provided by **Gustavia Home LLC, and important data regarding that information is found**
**on page two of this document.**

You are hereby provided formal notice that you are in default under the terms and conditions of the Note and
Security Instrument (i.e., Deed of Trust, Mortgage, etc.) for failure to pay the required installments.  The
amount required to cure your default as of the date of this letter is the sum of payments that have come due
on and after the date of default, September 1, 2011, plus late charges, periodic adjustments to the payment
amount and costs, all of which total **$53,670.54**.  The date of default is the date that you are due for under
the terms of the Note.

You may cure your default within 90 days from the date of this letter, which is February 2, 2017 (or if said
date falls on a Saturday, Sunday or legal Holiday, then on the first business day thereafter) by remitting
payment to SN Servicing for the above amount, plus all applicable penalties, late charges, and additional
fees and expenses which became due during this 90-day period. This amount includes amounts which will
become due after the date of this notice, but before 90 days from the date of this letter. As a result of the
default, any payment arrangements other than those stated in the Note and Security Instrument will no
longer be accepted.  SN Servicing reserves the right to accept or reject a partial payment of the total amount
due without waiving any of its rights herein or otherwise.  SN Servicing requires that all payments must be
made in certified funds, cashier's check or money order(s).

This letter serves as further notice that SN Servicing intends to enforce the provisions of the Note and
Security Instrument.  If you do not pay the full amount of $53,670.54 plus all applicable penalties, late
charges, and additional fees and expenses which became due during this 90-day period on or before
February 2, 2017 (or if said date falls on a Saturday, Sunday or legal Holiday, then on the first business data
thereafter), this letter shall serve as further notice to you that immediately thereafter, and without further
demand or notice to you, SN Servicing will accelerate the entire sum of both principal and interest.  Gustavia
Home LLC may also invoke any and all remedies provided for in the Note and Security Instrument, including
but not limited to the foreclosure sale of the property.  Additional attorney's fees and costs, as provided for in



### SN SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

the Security Instrument, that may be incurred will be your responsibility should you choose to cure the default.  As of the date of this letter, the total amount of the Debt owed is the sum of the unpaid principal balance, which is $185,870.94, plus accrued but unpaid interest, late charges, advances and costs.

You may, if required by law or your loan documents, have the right to cure your default after the acceleration of your payments and prior to the foreclosure sale of your property by paying all amounts past due within the time permitted by law.  However, you will be responsible for all reasonable fees and costs incurred by SN Servicing in pursuing any of their remedies, including but not limited to reasonable attorney's fees, to the full extent permitted by law.  Further, you may have the right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

#### IMPORTANT INFORMATION REGARDING YOUR DEBT

SN Servicing is attempting to collect a debt that you owe to Gustavia Home LLC and any information that we obtain will be used for that purpose.

You are hereby further notified of the following information regarding your Debt:

1) **The amount of the debt:  Remaining principal balance of $185,870.94 plus unpaid accrued interest, escrow/impound shortages or credits, late charges, legal fees/costs, and miscellaneous charges.**

2) **Name of the creditor to whom the debt is owed:  Gustavia Home LLC.**

3) **Unless you dispute the validity of the debt or any portion thereof within thirty (30) days after receipt of the Notice, we will assume that the debt is valid.**

4) **If you notify us in writing within thirty (30) days after receipt of the Notice that the debt or any portion thereof is disputed, we will obtain verification of the debt or a copy of any judgment against you representing the debt and a copy of such verification or judgment will be mailed to you from our office.**

5) **You will be provided with the name and address of the original creditor, if different from the current creditor, if you send us a request for this information, within thirty (30) days after receipt of this Notice.**

The right to reinstate the debt may be available in many states, and you should ask your own lawyer about this right.  NO PERSON IN THIS OFFICE WILL GIVE YOU ANY LEGAL ADVICE.

If, at any time, you make a written request to this office not to be contacted by phone at your place of employment, we will not do so.  If, at any time, you make a written request to this office not to contact you, we will not do so, except by legal action.

You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies.

**All communication about this matter must be made through SN Servicing.   If you have ANY QUESTIONS regarding the amounts due, or wish to discuss payment arrangements, please contact Stephanie Childress at (800) 603-0836.**

**SN Servicing requires that all payments must be made in certified funds, cashier's check or money order(s) payable to and mailed to:**

**SN Servicing Corporation**
**323 Fifth Street**
**Eureka, CA  95501**



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

Very truly yours,

SN Servicing Corporation

For Colorado residents, SN Servicing Corporation may also be contacted at the following address or phone number during normal business hours: Colorado Manager, Inc, 80 Garden Center, Suite 3, Broomfield, CO 80020, 303-920-4763 office, or 303-920-4767 fax.

# EXHIBIT E



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

November 4, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
FIRST CLASS MAIL

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT.  ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.

## IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.

Renee Butler
328 Jefferson Ave Apt 1
Brooklyn, NY 11216

Property Address:  328 JEFFERSON AVE, BROOKLYN, NY 11216

RE:    Account No.

YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY

AS OF NOVEMBER 4, 2016, YOUR HOME IS 1891 DAYS IN DEFAULT. UNDER NEW YORK STATE LAW, WE ARE REQUIRED TO SEND YOU THIS NOTICE TO INFORM YOU THAT YOU ARE AT RISK OF LOSING YOUR HOME. YOU CAN CURE THIS DEFAULT

 SERVICING **CORPORATION**

323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836

BY MAKING THE PAYMENT OF $239,541.48 PLUS ALL
APPLICABLE PENALTIES, LATE CHARGES, AND ADDITIONAL
FEES AND EXPENSES WHICH BECOMES DUE DURING THIS 90-
DAY PERIOD BY FEBRUARY 2, 2017.

IF YOU ARE EXPERIENCING FINANCIAL DIFFICULTY, YOU
SHOULD KNOW THAT THERE ARE SEVERAL OPTIONS
AVAILABLE TO YOU THAT MAY HELP YOU KEEP YOUR HOME.
ATTACHED TO THIS NOTICE IS A LIST OF GOVERNMENT
APPROVED HOUSING COUNSELING AGENCIES IN YOUR AREA
WHICH PROVIDE FREE OR VERY LOW-COST COUNSELING. YOU
SHOULD CONSIDER CONTACTING ONE OF THESE AGENCIES
IMMEDIATELY. THESE AGENCIES SPECIALIZE IN HELPING
HOMEOWNERS WHO ARE FACING FINANCIAL DIFFICULTY.
HOUSING COUNSELORS CAN HELP YOU ASSESS YOUR
FINANCIAL CONDITION AND WORK WITH US TO EXPLORE THE
POSSIBILITY OF MODIFYING YOUR LOAN, ESTABLISHING AN
EASIER PAYMENT PLAN FOR YOU, OR EVEN WORKING OUT A
PERIOD OF LOAN FORBEARANCE. IF YOU WISH, YOU MAY ALSO
CONTACT US DIRECTLY BY CONTACTING STEPHANIE
CHILDRESS AT (800) 603-0836 AND ASK TO DISCUSS POSSIBLE
OPTIONS.

WHILE WE CANNOT ASSURE THAT A MUTUALLY AGREEABLE
RESOLUTION IS POSSIBLE, WE ENCOURAGE YOU TO TAKE
IMMEDIATE STEPS TO TRY TO ACHIEVE A RESOLUTION. THE
LONGER YOU WAIT, THE FEWER OPTIONS YOU MAY HAVE.

IF THIS MATTER IS NOT RESOLVED WITHIN 90 DAYS FROM THE
DATE THIS NOTICE WAS MAILED, WE MAY COMMENCE LEGAL
ACTION AGAINST YOU (OR SOONER IF YOU CEASE TO LIVE IN
THE DWELLING AS YOUʀ PRIMARY RESIDENCE.)

 IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW
YORK STATE DEPARTMENT OF FINANCIAL SERVICES' TOLL-
FREE HELPLINE AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S
WEBSITE AT HTTP://WWW.DFS.NY.GOV .



323 FIFTH STREET
EUREKA, CA  95501
(800) 603-0836


**THE MATTERS DISCUSSED HEREIN ARE OF EXTREME
IMPORTANCE. WE TRUST THAT YOU WILL GIVE THEM YOUR
IMMEDIATE ATTENTION.**

Very truly yours,

SN Servicing Corporation

Enclosures



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

November 4, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
FIRST CLASS MAIL

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SN
SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND
ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT. ANY
INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT
PURPOSE.**

**IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN
BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS
CORRESPONDENCE IS NOT AND SHOULD NOT BE
CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT
AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN
THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR
PROPERTY.**

Renee Butler
328 Jefferson Ave
Brooklyn, NY 11216

Property Address: 328 JEFFERSON AVE, BROOKLYN, NY 11216

RE:    Account No.

YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING
NOTICE CAREFULLY

AS OF NOVEMBER 4, 2016, YOUR HOME IS 1891 DAYS IN
DEFAULT. UNDER NEW YORK STATE LAW, WE ARE REQUIRED
TO SEND YOU THIS NOTICE TO INFORM YOU THAT YOU ARE AT
RISK OF LOSING YOUR HOME. YOU CAN CURE THIS DEFAULT

## SN SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

BY MAKING THE PAYMENT OF $239,541.48 PLUS ALL
APPLICABLE PENALTIES, LATE CHARGES, AND ADDITIONAL
FEES AND EXPENSES WHICH BECOMES DUE DURING THIS 90-
DAY PERIOD BY FEBRUARY 2, 2017.

IF YOU ARE EXPERIENCING FINANCIAL DIFFICULTY, YOU
SHOULD KNOW THAT THERE ARE SEVERAL OPTIONS
AVAILABLE TO YOU THAT MAY HELP YOU KEEP YOUR HOME.
ATTACHED TO THIS NOTICE IS A LIST OF GOVERNMENT
APPROVED HOUSING COUNSELING AGENCIES IN YOUR AREA
WHICH PROVIDE FREE OR VERY LOW-COST COUNSELING. YOU
SHOULD CONSIDER CONTACTING ONE OF THESE AGENCIES
IMMEDIATELY. THESE AGENCIES SPECIALIZE IN HELPING
HOMEOWNERS WHO ARE FACING FINANCIAL DIFFICULTY.
HOUSING COUNSELORS CAN HELP YOU ASSESS YOUR
FINANCIAL CONDITION AND WORK WITH US TO EXPLORE THE
POSSIBILITY OF MODIFYING YOUR LOAN, ESTABLISHING AN
EASIER PAYMENT PLAN FOR YOU, OR EVEN WORKING OUT A
PERIOD OF LOAN FORBEARANCE. IF YOU WISH, YOU MAY ALSO
CONTACT US DIRECTLY BY CONTACTING STEPHANIE
CHILDRESS AT (800) 603-0836 AND ASK TO DISCUSS POSSIBLE
OPTIONS.

WHILE WE CANNOT ASSURE THAT A MUTUALLY AGREEABLE
RESOLUTION IS POSSIBLE, WE ENCOURAGE YOU TO TAKE
IMMEDIATE STEPS TO TRY TO ACHIEVE A RESOLUTION. THE
LONGER YOU WAIT, THE FEWER OPTIONS YOU MAY HAVE.

IF THIS MATTER IS NOT RESOLVED WITHIN 90 DAYS FROM THE
DATE THIS NOTICE WAS MAILED, WE MAY COMMENCE LEGAL
ACTION AGAINST YOU (OR SOONER IF YOU CEASE TO LIVE IN
THE DWELLING AS YOUR PRIMARY RESIDENCE.)

IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW
YORK STATE DEPARTMENT OF FINANCIAL SERVICES' TOLL-
FREE HELPLINE AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S
WEBSITE AT HTTP://WWW.DFS.NY.GOV .



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

**THE MATTERS DISCUSSED HEREIN ARE OF EXTREME
IMPORTANCE. WE TRUST THAT YOU WILL GIVE THEM YOUR
IMMEDIATE ATTENTION.**

Very truly yours,

SN Servicing Corporation

Enclosures

 SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

November 4, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
FIRST CLASS MAIL

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT. ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.

## IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.

Sergei Maslikhov
328 Jefferson Ave Apt 1
Brooklyn, NY 11216

Property Address: 328 JEFFERSON AVE, BROOKLYN, NY 11216

RE:     Account No.

YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY

AS OF NOVEMBER 4, 2016, YOUR HOME IS 1891 DAYS IN DEFAULT. UNDER NEW YORK STATE LAW, WE ARE REQUIRED TO SEND YOU THIS NOTICE TO INFORM YOU THAT YOU ARE AT RISK OF LOSING YOUR HOME. YOU CAN CURE THIS DEFAULT

# $\mathbf{\tilde{N}}$ SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

BY MAKING THE PAYMENT OF $239,541.48 PLUS ALL
APPLICABLE PENALTIES, LATE CHARGES, AND ADDITIONAL
FEES AND EXPENSES WHICH BECOMES DUE DURING THIS 90-
DAY PERIOD BY FEBRUARY 2, 2017.

IF YOU ARE EXPERIENCING FINANCIAL DIFFICULTY, YOU
SHOULD KNOW THAT THERE ARE SEVERAL OPTIONS
AVAILABLE TO YOU THAT MAY HELP YOU KEEP YOUR HOME.
ATTACHED TO THIS NOTICE IS A LIST OF GOVERNMENT
APPROVED HOUSING COUNSELING AGENCIES IN YOUR AREA
WHICH PROVIDE FREE OR VERY LOW-COST COUNSELING. YOU
SHOULD CONSIDER CONTACTING ONE OF THESE AGENCIES
IMMEDIATELY. THESE AGENCIES SPECIALIZE IN HELPING
HOMEOWNERS WHO ARE FACING FINANCIAL DIFFICULTY.
HOUSING COUNSELORS CAN HELP YOU ASSESS YOUR
FINANCIAL CONDITION AND WORK WITH US TO EXPLORE THE
POSSIBILITY OF MODIFYING YOUR LOAN, ESTABLISHING AN
EASIER PAYMENT PLAN FOR YOU, OR EVEN WORKING OUT A
PERIOD OF LOAN FORBEARANCE. IF YOU WISH, YOU MAY ALSO
CONTACT US DIRECTLY BY CONTACTING STEPHANIE
CHILDRESS AT (800) 603-0836 AND ASK TO DISCUSS POSSIBLE
OPTIONS.

WHILE WE CANNOT ASSURE THAT A MUTUALLY AGREEABLE
RESOLUTION IS POSSIBLE, WE ENCOURAGE YOU TO TAKE
IMMEDIATE STEPS TO TRY TO ACHIEVE A RESOLUTION. THE
LONGER YOU WAIT, THE FEWER OPTIONS YOU MAY HAVE.

IF THIS MATTER IS NOT RESOLVED WITHIN 90 DAYS FROM THE
DATE THIS NOTICE WAS MAILED, WE MAY COMMENCE LEGAL
ACTION AGAINST YOU (OR SOONER IF YOU CEASE TO LIVE IN
THE DWELLING AS YOUR PRIMARY RESIDENCE.)

IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW
YORK STATE DEPARTMENT OF FINANCIAL SERVICES' TOLL-
FREE HELPLINE AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S
WEBSITE AT HTTP://WWW.DFS.NY.GOV .



SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

**THE MATTERS DISCUSSED HEREIN ARE OF EXTREME
IMPORTANCE. WE TRUST THAT YOU WILL GIVE THEM YOUR
IMMEDIATE ATTENTION.**

Very truly yours,

SN Servicing Corporation

Enclosures

 SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

November 4, 2016

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
FIRST CLASS MAIL

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.  SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT THIS DEBT.  ANY INFORMATION THAT WE OBTAIN WILL BE USED FOR THAT PURPOSE.

## IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY AND THIS DEBT WAS NOT REAFFIRMED, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT SUCH A DEBT AS YOUR PERSONAL LIABILITY, BUT IS INSTEAD A STEP IN THE ENFORCEMENT OF A MORTGAGE LIEN AGAINST YOUR PROPERTY.

Sergei Maslikhov
328 Jefferson Ave
Brooklyn, NY 11216

Property Address: 328 JEFFERSON AVE, BROOKLYN, NY 11216

RE:   Account No.

YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY

AS OF NOVEMBER 4, 2016, YOUR HOME IS 1891 DAYS IN DEFAULT. UNDER NEW YORK STATE LAW, WE ARE REQUIRED TO SEND YOU THIS NOTICE TO INFORM YOU THAT YOU ARE AT RISK OF LOSING YOUR HOME. YOU CAN CURE THIS DEFAULT

# $\mathbf{N}$ SERVICING CORPORATION

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

BY MAKING THE PAYMENT OF $239,541.48 PLUS ALL
APPLICABLE PENALTIES, LATE CHARGES, AND ADDITIONAL
FEES AND EXPENSES WHICH BECOMES DUE DURING THIS 90-
DAY PERIOD BY FEBRUARY 2, 2017.

IF YOU ARE EXPERIENCING FINANCIAL DIFFICULTY, YOU
SHOULD KNOW THAT THERE ARE SEVERAL OPTIONS
AVAILABLE TO YOU THAT MAY HELP YOU KEEP YOUR HOME.
ATTACHED TO THIS NOTICE IS A LIST OF GOVERNMENT
APPROVED HOUSING COUNSELING AGENCIES IN YOUR AREA
WHICH PROVIDE FREE OR VERY LOW-COST COUNSELING. YOU
SHOULD CONSIDER CONTACTING ONE OF THESE AGENCIES
IMMEDIATELY. THESE AGENCIES SPECIALIZE IN HELPING
HOMEOWNERS WHO ARE FACING FINANCIAL DIFFICULTY.
HOUSING COUNSELORS CAN HELP YOU ASSESS YOUR
FINANCIAL CONDITION AND WORK WITH US TO EXPLORE THE
POSSIBILITY OF MODIFYING YOUR LOAN, ESTABLISHING AN
EASIER PAYMENT PLAN FOR YOU, OR EVEN WORKING OUT A
PERIOD OF LOAN FORBEARANCE. IF YOU WISH, YOU MAY ALSO
CONTACT US DIRECTLY BY CONTACTING STEPHANIE
CHILDRESS AT (800) 603-0836 AND ASK TO DISCUSS POSSIBLE
OPTIONS.

WHILE WE CANNOT ASSURE THAT A MUTUALLY AGREEABLE
RESOLUTION IS POSSIBLE, WE ENCOURAGE YOU TO TAKE
IMMEDIATE STEPS TO TRY TO ACHIEVE A RESOLUTION. THE
LONGER YOU WAIT, THE FEWER OPTIONS YOU MAY HAVE.

IF THIS MATTER IS NOT RESOLVED WITHIN 90 DAYS FROM THE
DATE THIS NOTICE WAS MAILED, WE MAY COMMENCE LEGAL
ACTION AGAINST YOU (OR SOONER IF YOU CEASE TO LIVE IN
THE DWELLING AS YOUR PRIMARY RESIDENCE.)

IF YOU NEED FURTHER INFORMATION, PLEASE CALL THE NEW
YORK STATE DEPARTMENT OF FINANCIAL SERVICES' TOLL-
FREE HELPLINE AT 1-877-226-5697 OR VISIT THE DEPARTMENT'S
WEBSITE AT HTTP://WWW.DFS.NY.GOV .



**SERVICING CORPORATION**

323 FIFTH STREET
EUREKA, CA 95501
(800) 603-0836

**THE MATTERS DISCUSSED HEREIN ARE OF EXTREME IMPORTANCE. WE TRUST THAT YOU WILL GIVE THEM YOUR IMMEDIATE ATTENTION.**

Very truly yours,

SN Servicing Corporation

Enclosures

# EXHIBIT F



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : SN Servicing Corporation |
| Address | : 323 Fifth Street |
| | Eureka CA 95501 |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS4097960 |
| Mailing Date Step 1 | : 04-NOV-16 12.00.00.000 AM |
| Mailing Date Step 2 | : |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 04-NOV-16 02.47.33.000 PM |
| Filing Date Step 1 Orig | : 04-NOV-16 02.46.02.000 PM |
| Filing Date Step 2 | : |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : Other |
| Property Address | : 328 Jefferson Ave  Brookyn |
| | NY 11216 |
| County | : Kings |
| Date of Original Loan | : 29-JUN-07 12.00.00.000 AM |
| Amt of Original Loan | : 200000 |
| Loan Number Step 1 | : |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : |
| Loan Type | : Junior Lien |
| Loan Details | : Fixed Rate |
| Loan Term | : 30 Year |
| Loan Modification | : No Modification |
| Days Delinquent | : Other |
| Borrower's Name | : Sergei  Maslikhov |
| Address | : 328 Jefferson Ave Apt 1 |
| | Brooklyn  11216 |
| Borrower's Phone No | : 7182072098 |
| Filing Status | : Step 1 Completed |

Sincerely,

New York State Department of Financial Services



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : SN Servicing Corporation |
| Address | : 323 Fifth Street |
| | Eureka CA 95501 |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS4097960 |
| Mailing Date Step 1 | : 04-NOV-16 12.00.00.000 AM |
| Mailing Date Step 2 | : |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 04-NOV-16 02.47.33.000 PM |
| Filing Date Step 1 Orig | : 04-NOV-16 02.46.02.000 PM |
| Filing Date Step 2 | : |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : Other |
| Property Address | : 328 Jefferson Ave  Brookyn |
| | NY 11216 |
| County | : Kings |
| Date of Original Loan | : 29-JUN-07 12.00.00.000 AM |
| Amt of Original Loan | : 200000 |
| Loan Number Step 1 | : |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : |
| Loan Type | : Junior Lien |
| Loan Details | : Fixed Rate |
| Loan Term | : 30 Year |
| Loan Modification | : No Modification |
| Days Delinquent | : Other |
| Borrower's Name | : Renee  Butler |
| Address | : 328 Jefferson Ave Apt 1 |
| | Brooklyn 11216 |
| Borrower's Phone No | : 7182072098 |
| Filing Status | : Step 1 Completed |

Sincerely,

New York State Department of Financial Services

# EXHIBIT G

 # SERVICING CORPORATION

### 323 FIFTH STREET (95501)
### P.O. BOX 35
### EUREKA, CA  95502
### (800) 603-0836

May 09, 2017

RENEE BUTLER
328 JEFFERSON AVE
BROOKLYN, NY 11216
Your Reference:

Re:

      RENEE BUTLER
      328 JEFFERSON AVE
      BROOKLYN, NY 11216

Pay off figures for the above referenced loan/borrower are:

| | |
|---|---|
| Projected Payoff Date | 06/09/2017 |
| Principal Balance | $185,870.94 |
| Interest to 06/09/2017 | $57,137.18 |
| Other (See Attached Detail) | $0.00 |
| Prepayment Penalty | $0.00 |
| Funds owed by Borrower | $0.00 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $243,008.12 |
| Per diem | $ 26.73 |

The next payment due is 09/01/2011.  The current interest rate is   5.25   % and the P&I payment is $ 813.19.

**PAY OFF INSTRUCTIONS/INFORMATION:**
- Pay off figures are subject to change so please call **800-603-0836** to update these figures prior to remitting funds.
- Funds received after 12:00 noon will be processed on the next business day and interest will be charged through that date.
- All pay off figures are subject to clearance of funds in transit.  The pay off is subject to final audit when presented.
- Please provide the borrower's forwarding address so any overpayment or refund can be directly mailed to the borrower.
- We will prepare the release of our interest in the property after all funds have cleared.

**REMITTANCE INFORMATION:**

**Make checks payable to:**     Gustavia Home LLC

**Mailing Address:**                              **Express/Overnight Mail Address:**

   SN Servicing Corporation                         **Bank of Texas**
   Gustavia Home LLC                             **c/o Remittance Services, Dept 41548**
   PO BOX 660820                                  **2650 Royal Lane**
   DALLAS, TX 75266-0820                     **Dallas, TX 75229**

**Wiring Instructions:**

Gustavia Home LLC, Bank of Texas, ACCT #           , ABA #